IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JULIE ANNE KEDDIE,<br><br>    Plaintiff,<br><br>vs.<br><br>KILOLO KIJAKAZI,<br><br>    Defendant. | )<br>)<br>)<br>)<br>) Civil Action No. 20-01365<br>)<br>)<br>)<br>)<br>) |

ORDER

AND NOW, this 17th day of March 2022, the Court has considered the parties' cross motions for summary judgment and will award judgment in favor of Defendant. The decision denying Plaintiff's application for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381 *et seq.*, will be affirmed because it is supported by substantial evidence and because it is not appropriate to remand that additional evidence might be taken before the Commissioner of Social Security ("Commissioner"). *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).[1]

---

[1] Plaintiff protectively filed an application for SSI benefits on December 22, 2016, wherein she alleged she had been disabled since December 10, 2009. (R. 19). In pursuit of her application, Plaintiff appeared before an Administrative Law Judge ("ALJ") on October 23, 2018. (*Id.*). She opted to proceed *pro se* at that time. (*Id.*). Considering testimony from Plaintiff, her mother, and a vocational expert ("VE") alongside other evidence in the record, the ALJ found that Plaintiff's residual functional capacity ("RFC") and other vocational factors would permit adjustment to unskilled sedentary jobs such as addresser, document specialist, or surveillance systems monitor. (R. 28). Because a significant number of those jobs existed in the national economy, the ALJ decided that Plaintiff was not under a disability and, thus, denied her claim. (R. 28—29).

Before this Court Plaintiff argues that the ALJ's decision should be set aside for two reasons: first, she argues that the ALJ's explanation of how he formulated her RFC is too conclusory for meaningful judicial review and, therefore, cannot be found to be supported by substantial evidence; second, she argues the ALJ inadequately developed the record insofar as he failed to exhibit a 2017 neuropsychological evaluation relevant to her claim. As explained

herein, the Court finds no deficiency in the ALJ's explanation of the RFC finding, nor in his development of the record. Accordingly, the Court will grant Defendant's motion for summary judgment.

ALJs find a claimant's RFC at the fourth step of the five-step sequential evaluation used to evaluate disability. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 202 n.2 (3d Cir. 2019) (explaining where the RFC finding falls among the five steps). At step one, the ALJ must ensure that the claimant is not engaged in "substantial gainful activity;" next—at step two—the ALJ identifies the claimant's "medically determinable physical or mental impairment[s]," of which, at least one must be "severe" (singularly or in combination with others) and durationally sufficient; third, the ALJ determines whether the claimant's impairment(s) meet the criteria for any of the presumptively disabling impairments listed in the regulations. 20 C.F.R. § 416.920(a)(4)(i)—(iii). If the claimant's impairment(s) do not meet or equal the criteria for such an impairment, then the ALJ must assess the claimant's RFC to decide whether he or she can return to "past relevant work." *Id.* § 416.920(a)(4)(iv). If the claimant cannot return to past work, then it falls to the ALJ to identify appropriate alternative work that the claimant could perform given his or her RFC, age, education, and work experience. *Id.* § 416.920(a)(4)(v). If the ALJ cannot identify an appropriate occupation that offers a significant number of jobs in the national economy, the claimant will be found to be disabled. *Id.*

As is evident, the RFC finding is critical to an ALJ's decision at steps four and five of the evaluation. Like all the ALJ's findings, it must be supported by "substantial evidence," that is, evidence sufficient to satisfy a "reasonable mind." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) (citations omitted). The RFC sets out the parameters of a claimant's work abilities. 20 C.F.R. § 416.945(a)(1). In formulating the RFC, the ALJ must consider all the relevant evidence in the record and provide "a clear and satisfactory explication of the basis on which it rests." *Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001) (citing *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981)). The ALJ may structure his or her explanation of the finding any way he or she chooses—there is no "particular language" or "particular format" required. *Brooks v. Saul*, No. CV 19-2855, 2019 WL 7048794, at *7 (E.D. Pa. Dec. 23, 2019) (citing *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004)).

Plaintiff's first argument is that the ALJ's explanation for the RFC finding in this matter is too conclusory and untethered to the evidence in the record to permit this Court's meaningful review of the finding to determine whether it is supported by substantial evidence. She argues that the ALJ should have articulated the evidentiary basis for each limitation in the RFC with specificity but, instead, he laid out the RFC and then briefly summarized the evidence (allegations, medical records, and opinions) to support it. As explained above, ALJs are not required to use any "particular language" or "format" in their decisions. *Jones*, 364 F.3d at 505. Therefore, while ALJs *may* support an RFC finding by listing the evidence that supports each limitation one-by-one, the ALJ may also explain how the evidence supports the RFC with a "narrative discussion" of such evidence. *Brooks*, 2019 WL 7048794, at *7 (citing cases wherein

2

the courts have found substantial evidence supported the RFC finding despite the lack of a "function-by-function" analysis).

In this case, the ALJ formulated a sedentary-work RFC with several additional limitations, including but not limited to postural limitations, fingering/handling/feeling limitations, and limitation to "simple, routine, and repetitive tasks;" "low stress work, defined as occasional, simple decision-making and occasional changes in the work setting;" and "occasional interaction with coworkers, supervisors, and the public." (R. 24). Concerning the mental limitations therein, the ALJ explained that he did not include further limitations because though Plaintiff alleged difficulty with "memory, completing tasks, concentrating, and understanding," as well as "low energy and fatigue," the other evidence could not support more restrictive limitations. (R. 25—27). The ALJ noted that some of Plaintiff's mental health records indicated Plaintiff could feel "overwhelmed, anxious, exhausted, and irritable" with difficulty "completing tasks, and concentrating." (R. 26). Yet, in other records, Plaintiff demonstrated appropriate mood and affect without "acute distress" and, further, Plaintiff had been able to enroll at the University of Pittsburgh where she did well. (R. 26—27).

The ALJ supplemented his discussion of this evidence at step four by referring to his discussion of evidence pertaining to Plaintiff's mental capacity in the four broad areas of functioning relevant to whether Plaintiff's impairments met/equaled the criteria for a listed impairment at step three. (R. 27). At step three the ALJ had found Plaintiff to be moderately limited in three areas: understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace. (R. 23). Plaintiff was found to be only mildly limited in "adapting or managing oneself." (*Id.*). The ALJ supported his findings of one mild and three moderate limitations by explaining that he sought to strike a balance between indicia of significant limitations—*e.g.*, Plaintiff's reported need for prompting to take medications and social withdrawal—and indicia of Plaintiff's not insubstantial abilities—*e.g.*, intact memory, normal attention and concentration, ability to get along with others, and her ability to maintain good grades. (*Id.*). Considering the medical opinion evidence, the ALJ afforded Dr. Urbanowicz's opinion "some weight," but imposed greater limitations on Plaintiff's interpersonal interactions than the doctor had because of Plaintiff's self-reported social isolation and lack of relationships with friends or neighbors. (R. 23—24).

Pulling together his consideration of the evidence at step four with his discussion of Plaintiff's mental functioning at step three, the ALJ sought to harmonize evidence that could have supported greater limitations with evidence that could have supported lesser limitations. (R. 26—27). He did much the same for Plaintiff's physical limitations, acknowledging evidence of Plaintiff's symptoms while balancing that evidence with indicia of Plaintiff's "routine and conservative" treatment and significant activities of daily living (*e.g.*, cooking, cleaning, and helping care for her father). (R. 25). Overall, this statement of reasons is clear and detailed enough to permit this Court's review and, further, adequately supports the RFC finding. Rather than strike a balance among the evidence, the ALJ certainly could have opted to reject some evidence and elevate competing evidence. However, the possibility that the evidence could have

supported a different outcome had it been weighed differently does not mean the RFC finding is unsupported by substantial evidence. *See Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Plaintiff's second argument is that the ALJ's development of the record was deficient because he did not obtain and exhibit a 2017 neuropsychological evaluation authored by Dr. Della Toffalo. Plaintiff appeared before the ALJ without counsel and indicated that she would need help developing her record. (R. 77—80). At that time, she did not file, nor did the ALJ obtain, the evaluation at issue. Plaintiff later presented the evaluation to the Appeals Council ("AC") when she requested its review of the ALJ's decision, but the AC decided that it and other evidence Plaintiff submitted failed to "show a reasonable probability" of changing the outcome of her case. (R. 2). In addition to arguing that the ALJ shirked a duty to obtain the evaluation and that its absence undermined the RFC determination, Plaintiff argues that this evidence satisfies the criteria for a remand to take additional evidence.

Though claimants bear the burden of proof through the fourth step of the evaluation used to determine disability, ALJs shoulder some responsibility for developing the record. 20 C.F.R. § 416.912(b) ("Our responsibility"). ALJs are tasked with "develop[ing the claimant's] complete medical history for at least the 12 months preceding the month in which [the claimant] file[d his or her] application unless there is a reason to believe that development of an earlier period is necessary." *Id.* § 416.912(b)(1); *Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995) (citing *Hess v. Sec'y of Health, Ed. & Welfare*, 497 F.2d 837, 841 (3d Cir. 1974) (explaining the import of the Act's "beneficent purposes")). This duty is critical where claimants decide to proceed unrepresented. *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003).

Dr. Della Toffalo's 2017 evaluation was completed at the behest of the Pennsylvania Office of Vocational Rehabilitation (OVR) for the purpose of, *inter alia*, "determin[ing] potential disability-related supports that may be required in post-secondary educational and/or vocational settings due to [Plaintiff's] history of psychiatric symptoms and current concerns of inattention problems secondary to depression symptoms." (R. 102). Dr. Della Toffalo used many assessment techniques in his evaluation of Plaintiff's intellect (R. 104—05), achievement (R. 105), neuropsychological functioning (R. 105—10), socioemotional functioning (R. 110—13), and personality (R. 113—14). Assessments in those areas revealed strengths and weaknesses. For instance, Plaintiff demonstrated intellectual functioning that was—overall—average, with verbal reasoning ability in the 95th percentile ("well above average"). (R. 104). However, Plaintiff was only in the 14th percentile, *i.e.*, "below average range," in "overall speed and efficiency in processing both basic and more complex information." (R. 105). Plaintiff's reading achievement scores were in the average or above average range, but for math skills she consistently fell below average to the extent that her scores were consistent with a math impairment. (*Id.*).

After Dr. Della Toffalo detailed his findings in each of the areas listed above, he listed his clinical impressions: "Specific Learning Disorder with Impairment in Mathematics[,] Mild Neurocognitive Disorder (Nonverbal Learning Disability Syndrome)[,] [moderate] Bipolar I Disorder . . . PCOS . . . Type I Diabetes . . . [and] Hashimoto's Thyroiditis." (R. 114). He also

---

disclosed the results of a Career Ability Survey (CAPS) and found that it "suggest[ed] that [Plaintiff] possesses a profile of vocational aptitudes strong enough to predict her likely success (with appropriate education/training) in all of the broad occupational areas as represented by the CAPS." (R. 114). Finally, he provided a summary with recommendations. (R. 115). Therein, he reiterated that Plaintiff maintained a "profile of aptitudes" that predicted her likely success in multiple occupational areas. (R. 117). He opined that Plaintiff's "stated goal of completing her current Associate's Degree Program in the field of social work . . . appears to be supported by the overall results of this evaluation." (*Id.*). He cautioned that Plaintiff should be cognizant of her weaknesses and ought to seek careers that "have a high degree of job structure and predictability and will not require intensive interpersonal interactions . . . [or] high levels of social competence, or frequent need for timely 'on-the-spot' independent/novel decision-making." (*Id.*). Given that opinion, he further cautioned that Plaintiff's chosen field of study—social work—might require strength in areas where Plaintiff was weak such that he recommended she consider other "vocations of high interest" or careers in social work that would minimize her weaknesses while capitalizing on her strengths. (*Id.*).

While this evaluation is certainly relevant to Plaintiff's mental impairments and limitations, Plaintiff has only summarily argued before this Court that the evaluation's absence from her record "undermines the mental RFC" and that it contained "limitations . . . that were not accounted for in the RFC." (Doc. No. 15, pgs. 17, 19). Her argument is broad, and she has not specified which part of the evaluation so undermines the RFC. It is worth noting that claimants are entitled to a determination of disability based on a full and fair record and ALJs must assist in developing such a record, but full and fair does not necessarily mean exhaustive. For instance, though ALJs may order consultative examinations, they exercise that power only when the claimant's medical sources do not provide enough evidence to decide whether the claimant is disabled. 20 C.F.R. § 416.917. Thus, the mere fact that a record existed and was relevant to a claimant's application, does not mean the ALJ erred in failing to exhibit it.

More importantly, when this Court considers the appropriateness of a remand to permit consideration of additional evidence pursuant to the sixth sentence of 42 U.S.C. § 405(g), it must evaluate the request pursuant to three criteria:

> First, the evidence must be new and not merely cumulative of what is in the record. Second, the evidence must be material. This means that it must be relevant and probative, and there must be a reasonable possibility that the new evidence would have changed the outcome of the determination. Third, the plaintiff must demonstrate good cause for not having incorporated the new evidence into the administrative record.

*Allshouse v. Astrue*, No. CIV.A. 12-1675, 2013 WL 1683608, at *1 n.1 (W.D. Pa. Apr. 17, 2013). In this case, even if the Court were to assume that the evaluation was new and that there was good cause for it being left out of the record, Plaintiff has failed to demonstrate "a reasonable possibility" that it would "change[] the outcome of the determination." *Id.* Though

5

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 14) is DENIED and Defendant's Motion for Summary Judgment (Doc. No. 18) is GRANTED as specified above.

s/ Alan N. Bloch<br>United States District Judge

ecf:   Counsel of Record

---

the evaluation contains information relevant to assessing Plaintiff's mental limitations, Plaintiff has not pointed out anything in it that contradicts the ALJ's findings.  Where Dr. Della Toffalo opined Plaintiff could find work even in her field of social work, there is not a reasonable possibility that his opinion would have dissuaded the ALJ from his finding that Plaintiff could perform unskilled work requiring only simple tasks, simple decision making, and occasional interaction with others.  For this and the foregoing reasons, the Court will affirm the ALJ's decision.